UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Petitioner,

v.

DERRICK WILLIAMSON,

Respondent.

CIVIL NO. 01-1579 (DSD/JMM)

REPORT AND RECOMMENDATION

The United States has filed a Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [Docket No. 1]. The Petition alleges that Respondent Derrick Williamson is presently suffering from a mental disease or defect for the treatment of which he is in need of custody and care in a suitable psychiatric facility. Respondent is a federal prisoner serving a 120-month sentence. He is currently housed at the Federal Medical Center at Rochester, Minnesota ("FMC-Rochester").

On November 15, 2001, a hearing was held at FMC-Rochester to determine whether Respondent is suffering from a mental disease or defect for which he is in need of custody for care or treatment. Assistant United States Attorney Joan Humes appeared on behalf of Petitioner; Assistant Federal Public Defender Katherine Menendez appeared on behalf of Respondent. The Court heard testimony from Respondent and psychiatrist Daniel Shine, Jr., M.D.

The matter is before the undersigned Magistrate Judge for a Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b)(1)(B). Upon the following Findings of Fact/Report, it is recommended that the Petition to Determine Present

DEC 21 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [Docket No. 1] be granted, that Respondent be committed to the custody of the Attorney General, and that the Attorney General hospitalize Respondent at FMC-Rochester.

## FINDINGS OF FACT/REPORT

Under 18 U.S.C. §4245, a prisoner who is serving time in a federal prison may not be transferred to a mental hospital without the prisoner's consent or a court order. United States v. Watson, 893 F.2d 970, 975 (8th Cir.), vacated in part on reh'g on other grounds by United States v. Holmes, 900 F.2d 1322 (8th Cir.), cert. denied, Watson v. United States, 497 U.S. 1006 (1990). If the prisoner objects to being transferred, the court must order a hearing to determine if there is "reasonable cause to believe that the person may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. §4245(a); United States v. Jones, 811 F.2d 444, 447 (8th Cir. 1987). "If, after the hearing, the court finds by a preponderance of the evidence that the person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General." 18 U.S.C. §4245(d). The Attorney General must then hospitalize the prisoner "for treatment in a suitable facility until he is no longer in need of such custody for care or treatment or until the expiration of the sentence of imprisonment, whichever occurs earlier." Id.

In summary, the Court is required to determine the answers to three questions: "Is the Respondent suffering from a mental disease or defect? If so, is the

Respondent in need of custody for care or treatment of that disease or defect? If so, is the proposed facility a suitable facility?" United States v. Horne, 955 F. Supp. 1141, 1144 (D. Minn. 1997). Respondent does not dispute that FMC-Rochester qualifies as a suitable facility under § 4245. We determine that the other questions should also be answered in the affirmative.

## I. RESPONDENT IS SUFFERING FROM A MENTAL DISEASE OR DEFECT.

Respondent has been diagnosed as suffering from Psychotic Disorder Not Otherwise Specified (NOS) by his treating psychologist at FMC-Rochester, Dr. Steven Norton. This diagnosis was confirmed by Dr. Shine, based upon his review of Respondent's medical records and central file, as well as his personal interactions with Respondent since assuming responsibility for his care in August 2001. The Court found Dr. Shine to be a credible witness, with a thorough understanding of Respondent's medical and psychological history.

The diagnosis of Psychotic Disorder NOS stems primarily from Respondent's delusions about his physical condition. Respondent was sent to FMC-Rochester in the Spring of 1998 for a medical evaluation, because officials had not been able to find a physical cause for his medical complaints. During the more than three years Respondent has been housed at FMC-Rochester, he has continuously complained of symptoms including abdominal pain, foul breath, foul body odor, white tongue, constipation, diarrhea, pain in his legs, and the inability to control his bowel movements.

While at FMC-Rochester, Respondent has received considerable medical attention in response to his physical complaints from staff physicians and from physicians

at the Mayo Clinic. See Petitioner's Exhibit 3, Summary of Medical Procedures. He has been diagnosed with Irritable Bowel Syndrome, an anal fissure, and tonsilitis. Multiple other tests and examinations have shown no additional physical problems. Respondent insists that these results are false and that staff at FMC-Rochester and the Mayo Clinic are covering up the true nature of his illness.[1]

Dr. Shine testified that somatic delusions, such as those experienced by Respondent, can often have some mild basis in fact. Respondent will often engage in "referential thinking," interpreting things happening around him to make them conform to and support his delusions. For example, Respondent has interpreted a nurse scratching her nose as if she was covering her nose in response to his offensive odor. On another occasion, he became enraged when an inmate cleaning outside his room used air freshener (part of the inmate's regular routine) because he believed the inmate was using the air freshener to cover up his foul odor. Respondent's delusions may even cause some physical symptoms, as in the case of his anal fissure. Dr. Shine testified that this physical problem could well have been caused by Respondent's extreme attention to cleaning and wiping his anus, caused by his delusion that he gives off a fecal odor. The fact that there is a mild factual basis for some of Respondent's delusions does not preclude the finding that he is suffering from a mental illness.

Respondent has not introduced any expert medical testimony to contradict the diagnoses of Dr. Norton and Dr. Shine. See United States v. Steil, 916 F.2d 485, 488

---

1

In an unsolicited Memorandum submitted *pro se* to the Court following the hearing, Respondent now asserts that he also has Graves Disease.

(8th Cir. 1990) (where mental health professionals found inmate to be mentally ill, the Eighth Circuit emphasized that "there is no medical opinion to the contrary in the record before us" in affirming the district court's conclusion that the inmate was mentally ill and dangerous under 18 U.S.C. § 4246). Given Dr. Shine's expert opinion and the evidence received at the hearing, the Court finds that the Government has carried its burden of showing by a preponderance of the evidence that Respondent is suffering from a mental disease or defect, specifically, Psychotic Disorder NOS.

## II. RESPONDENT IS IN NEED OF CUSTODY FOR CARE AND TREATMENT.

Title 18 U.S.C. §4245(d) does not define when a prisoner is "in need of custody for care or treatment," and there is very little case law discussing what standard should be applied. The question of when a prisoner is "in need" of custodial treatment has been discussed in one case by the District Court, United States v. Horne, 955 F. Supp. 1141 (D. Minn. 1997). In Horne, the Court stated that "if a prisoner whose mental illness was left untreated would pose a danger to himself or others if placed in the general prison population, . . . treatment is needed within the meaning of 18 U.S.C. §4245." Horne, 955 F. Supp. at 1149. The Fourth Circuit has held that a finding of dangerousness is not required. United States v. Akere, 2001 WL 867415 (4th Cir. Aug. 1, 2001). In order to be needed, treatment must be more than merely beneficial to the prisoner. Horne, 955 F. Supp. at 1147. Between the extremes of dangerous behavior and beneficial effect is a continuum of "need," and neither caselaw nor the statute make clear where the line is to be drawn for purposes of §4245.

Respondent has become increasingly angry and combative in response to what he perceives as a lack of attention to his medical problems. In May 2001, he jumped over a fence into a restricted area in an attempt to get away from FMC-Rochester staff members. He had to be subdued by several officers, one of whom Respondent punched in the face during the altercation. In November 2001, there were two occasions where Respondent held items, including a razor blade and a mirror, and refused to leave the shower until he was given the opportunity to call his attorney.[2] During this period, Respondent also expressed the opinion that his attorney was biased against him because he saw her conversing with FMC-Rochester personnel. Respondent has also engaged in two brief hunger strikes to protest his perceived lack of medical care.

Under these circumstances, we conclude that Respondent is in need of custody for care and treatment within the meaning of § 4245. Whether or not a finding of dangerousness is required, Respondent has been physically combative, and would pose a danger to himself and others if placed in the general prison population.

We note, in response to concerns raised by Respondent at the hearing, that the question of whether Petitioner may forcibly administer psychotropic drugs to Respondent is not before the Court at this time. "The determination of whether the Petitioner may forcibly administer psychotropic drugs should be made only following the inmate's commitment under 18 U.S.C. § 4245." Horne, 955 F. Supp. at 1151 (emphasis

---

2

These acts, among others, distinguish Respondent's case from the case cited in Respondent's Memorandum where an inmate was found not to be in need of custody for care and treatment, United States v. Varela, Civil No. 4-94-223 (JMR/FLN). In Varela, the Magistrate Judge noted that Varela had never been violent towards others, and that he cooperated with staff and followed institutional rules. In contrast, Respondent has exhibited dangerous and uncooperative behavior while at FMC-Rochester.

added). "Section 4245 addresses only the question of whether a federal inmate may be transferred to a facility for psychiatric treatment. . . . It does not define 'treatment,' nor does it authorize the United States to forcibly administer psychotropic drugs whenever it believes appropriate." Horne, 955 F. Supp. at 1151 (citation omitted). Even if the Court grants the Government's Petition under § 4245, that ruling alone will not authorize the Government to medicate Respondent against his will.

If a decision is made in the future that it would be of benefit to Respondent that he take psychotropic medication, he would first be given the option to take the medication voluntarily. If he agreed to take the medication, his informed consent would have to be obtained. See 28 C.F.R. § 549.41(b). If Respondent should elect not to take the medication voluntarily further administrative due process procedures would have to be provided to him. 28 C.F.R. § 549.43. Under those procedures an inmate will not be medicated without his consent until he has had an administrative hearing before a psychiatrist not currently involved with his diagnosis or treatment, and only if that psychiatrist concludes after the hearing that administration of the medication is necessary. 28 C.F.R. § 549.43(a). If the decision to medicate an inmate is approved after an administrative hearing, the inmate has a right to appeal that decision. 28 C.F.R. § 549.43(a)(7).

## RECOMMENDATION

For the reasons set forth above, it is recommended that the Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [Docket No. 1] be granted, that Respondent be committed to the custody of the Attorney

General, and that the Attorney General hospitalize Respondent at FMC-Rochester.

Dated: December 20, 2001

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **January 9, 2001** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **January 9, 2001**.